**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

H. A.,[1]                                      **3:19-cv-00002-BR**

         **Plaintiff,**                     **OPINION AND ORDER**

**v.**

**Commissioner, Social Security**
**Administration,**

         **Defendant.**


**GEORGE J. WALL**
**CAITLIN S. LAUMAKER**
Law Offices of George J. Wall
825 N.E. 20th Ave
Suite 330
Portland, OR 97232
(503) 236-0068

         Attorneys for Plaintiff

---

[1] Generally in the interest of privacy and pursuant to the recommendation of the Judicial Conference of the United States, the uses only the first name and the initial of the last name of the nongovernmental parties.  In this case, however, due to the unique nature of Plaintiff's first name, the Court uses the first initial of Plaintiff's first and last names.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3710

   Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff H. A. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on July 30, 2015, and

alleged a disability onset date of March 1, 2015.  Tr. 58.[2]  Her

application was denied initially and on reconsideration.  An

Administrative Law Judge (ALJ) held a hearing on September 14,

2017.  Tr. 41-57.  Plaintiff and a vocational expert (VE)

testified at the hearing.  Plaintiff was represented by an

attorney and had an interpreter for the proceeding.

On December 26, 2017, the ALJ issued an opinion in which he

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 17-36.  On November 13, 2018, that decision

became the final decision of the Commissioner when the Appeals

Council denied Plaintiff's request for review.  Tr. 1-8.  *See*

*Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on April 6, 1979, and was 38 years old at

the time of the hearing.  Tr. 58.  Plaintiff has a college

degree.  Tr. 45-46.  Plaintiff does not have any past relevant

work.  Tr. 35.

Plaintiff alleges disability due to post-traumatic stress

disorder (PTSD), depression, arthritis of the hands, and fatigue.

Tr. 58.

Except when noted, Plaintiff does not challenge the ALJ's

---

[2] Citations to the official transcript of record filed by
the Commissioner on May 10, 2019, are referred to as "Tr."

summary of the medical evidence.  After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the

medical evidence.  *See* Tr. 23-29.


## STANDARDS

The initial burden of proof rests on the claimant to

establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th

Cir. 2012).  To meet this burden a claimant must demonstrate her

inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  The ALJ must develop the record when there is

ambiguous evidence or when the record is inadequate to allow for

proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d

881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d

453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,

682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is

"relevant evidence that a reasonable mind might accept as

adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9ᵗʰ Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9ᵗʰ Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9ᵗʰ Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9ᵗʰ Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9ᵗʰ Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9ᵗʰ Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially

dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a

week, or an equivalent schedule." SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also
Keyser*, 648 F.3d at 724.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 416.920(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged

in substantial gainful activity since her July 30, 2015, alleged
onset date.  Tr. 19.

At Step Two the ALJ found Plaintiff has the severe
impairments of inflammatory arthritis; "somatic dysfunction of
thoracic region, status post resection of benign deep soft tissue
mass in the left anterior hip region"; depression; and PTSD.
Tr. 19.

At Step Three the ALJ concluded Plaintiff's impairments do
not meet or equal the criteria for any Listed Impairment from 20
C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff
has the RFC to perform light work "except she is limited to
simple, routine, repetitive tasks and simple work-related
decisions [and] can have occasional public and coworker
interaction."  Tr. 22.

At Step Four the ALJ found Plaintiff does not have any past
relevant work.  Tr. 29.

At Step Five the ALJ found Plaintiff can perform jobs that
exist in significant numbers in the national economy.  Tr. 29.
Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed "to
include manipulative limitations in [Plaintiff's RFC] caused by
inflammatory arthritis in both hands"; (2) improperly rejected

the opinion of Malika Burman, M.D., Plaintiff's treating

psychiatrist; (3) improperly gave little weight to the opinion of

Dalia Baadarani, Ph.D., QMPH,[3] Plaintiff's treating mental-health

professional and (4) improperly found at Step Five that Plaintiff

could perform other jobs that exist in the national economy.

## I.    The ALJ did not err when he did not include manipulative limitations in Plaintiff's RFC.

Plaintiff alleges the ALJ erred when he failed "to include

manipulative limitations in [Plaintiff's RFC] caused by

inflammatory arthritis in both hands."

The ALJ found at Step Two that Plaintiff had the severe

impairment of inflammatory arthritis, but he found at Step Three

that Plaintiff did not require special accommodations for the use

of her hands.  Lab tests conducted on April 21, 2015, "revealed

unremarkable CBC . . . and "[a]nti-CCP antibodies and rheumatoid

factor negative."  Tr. 408.  In addition, Peter Bonafede, M.D.,

one of Plaintiff's treating physicians, noted x-rays of

Plaintiff's hands were "normal."  Tr. 408.  Similarly, on March

31, 2016, Dr. Bonafede examined Plaintiff and found she had

"seronegative rheumatoid arthritis with ongoing symptoms and mild

---

[3] The record reflects Lutheran Community Services Northwest identified Dr. Baadarani as a Qualified Mental Health Professional (QMHP) in counseling notes from 2015 and 2016.  At some point in 2017, however, the record reflects Dr. Baadarani received her Doctor of Philosophy degree.  The Court, therefore, refers to Dr. Baadarani with her highest professional title in this Opinion and Order.

findings." Tr. 419. On June 2, 2017, Dr. Bonafede noted

Plaintiff had "seronegative rheumatoid arthritis with mild

findings." Tr. 431. Reviewing physician Lloyd Wiggins, M.D.,

found Plaintiff had a "mild [history] of arthritis," but he

concluded Plaintiff could perform light work. Tr. 62.

The Court concludes on this record that the ALJ did not err

when he did not "include manipulative limitations in [Plaintiff's

RFC] caused by inflammatory arthritis in both hands" because he

provided clear and convincing reasons supported by substantial

evidence in the record for doing so.

**II. The ALJ erred when he rejected Dr. Burman's opinion.**

Plaintiff asserts the ALJ erred when he rejected the opinion

of Dr. Burman, Plaintiff's treating psychiatrist.

An ALJ may reject a treating physician's opinion when it is

inconsistent with the opinions of other treating or examining

physicians if the ALJ makes "findings setting forth specific,

legitimate reasons for doing so that are based on substantial

evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957

(9th Cir. 2002). When the medical opinion of a treating

physician is uncontroverted, however, the ALJ must give "clear

and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at

957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir.

1996).

On May 3, 2016, Dr. Burman submitted a letter in which she

stated Plaintiff "has been severely ill due to PTSD for over 2

years." Tr. 356. Dr. Burman noted Plaintiff "bore witness to

life threatening violence against her and against her family

members while living in Iraq," and since she arrived in the

United States she "has been experiencing severe post traumatic

anxiety including flashbacks, panic attacks, insomnia,

hypervigilance, intense feelings of fear lasting all day, as well

as grief due to the loss of extended family members." Tr. 356.

Dr. Burman stated Plaintiff

> has great difficulty leaving her house, is easily
> triggered by loud noises which then leads to panic
> attacks. She has recurrent, involuntary, and
> intrusive distressing memories of traumatic
> events, including nightmares which prevent her
> from sleep. She has great difficulty maintaining
> her activities of daily functioning, namely caring
> for herself and managing her symptoms. She also
> has resultant memory loss, poor concentration,
> hypervigilence as a result of her surviving war
> and separation from her homeland. With her
> current symptom profile and severity of
> psychological damage endured, she is not safe to
> work outside the home or pursue any employment in
> society.

Tr. 356. Dr. Berman noted "on exam[ination] [Plaintiff] is

cooperative, appropriate and polite, however has difficulty

maintaining eye contact, does not smile, is tearful, and feels

hopeless about ever feeling better. She is severely anxious, at

times depressed, and has a very poor prognosis due to the

severity of atrocities witnessed as well as chronicity and

persistence of severe symptoms." Tr. 356.

The ALJ rejected Dr. Burman's opinion on the ground that it "is not fully consistent with the evidence of record, including her own treatment notes." Tr. 33. The ALJ pointed out that Dr. Berman's treatment note from May 3, 2016, indicated Plaintiff made good eye contact, she was well groomed, her speech and behavior were normal, and she was cooperative. Tr. 354-55. For that same visit, however, Dr. Berman also noted Plaintiff had "symptoms of PTSD that are largely unmitigated by one SSRI [and her] insomnia is intractable to Seroquel." Tr. 355. In addition, Dr. Berman's treatment notes reflect on other visits that Plaintiff had "adequate hygiene" and "constricted affect." Tr. 351. Plaintiff continually reported insomnia, "intense daily fear and flashback memories with hypervigilence and avoidance." Tr. 350-51.

In addition, the record is replete with reports that Plaintiff continued to suffer from PTSD and anxiety. For example, on April 21, 2015, Dr. Bonafede noted Plaintiff's skin was "warm and dry other than some perspiration with anxiety." Tr. 398. In May 2015 Plaintiff reported to Yana Little, M.D., examining physician, that she suffered from anxiety "from situation and trauma witnesses in Iraq" and that she could not sleep at night. Tr. 296. In June 2015 Plaintiff was seen by Brenda Ann Olson, M.D., to "follow up [about her] depression and poor sleep." Tr. 291. Dr. Olson reported Plaintiff was "well

groomed," but she had "poor eye contact . . . [and] continued
flat affect." Tr. 292. In July 2015 Dr. Olson noted Plaintiff
had "poor eye contact and flat affect, will engage in some
conversations, [but is] guarded, patient follows linear
conversation, [but] does not appear to be responding to external
stimuli." Tr. 287. In August 2015 Dr. Baadarani noted Plaintiff
experienced traumatic events in Iraq including being in a taxi
when "young men . . . opened fire on [her] car," witnessing "the
torture and killings of civilians on the streets," the
"kidnapping of her brother . . . and bombings." Tr. 260. As a
result, Plaintiff suffered PTSD symptoms including traumatic
nightmares, flashbacks, problems in concentration, and sleep
disturbances. Tr. 260. In November 2015 Plaintiff underwent a
pyschodiagnostic evaluation conducted by Kimberly Goodale,
Psy.D., who reported Plaintiff "engaged in no eye contact . . .
throughout the evaluation" and had a "notably flat" affect "with
no emotional expression." Tr. 314. Plaintiff exhibited "some
psychomotor slowing, consistent with depressive symptoms" as well
as "difficulties with memories and forgetfulness." Tr. 314.
Dr. Goodale concluded Plaintiff's "presentation and performance
suggest problems with attention and concentration, reduced memory
capacity, lapses orientation to time and surroundings, difficulty
following clear and simple instructions, and writing
difficulties." Tr. 315.

Although Plaintiff experienced some improvement in her conditions in December 2015 and January 2016, Plaintiff reported to Dr. Baadarani in February 2016 "on the edge of tearfulness [with] a depressed facial expression and disposition." Tr. 330. In March 2016 Plaintiff reported "traumatic memories from the past keep resurfacing," and she continued to suffer from poor sleep. Tr. 327. In October 2016 Plaintiff continued to suffer from nightmares and poor sleep. Tr. 348.

On this record the Court concludes the ALJ erred when he rejected Dr. Burman's opinion as to Plaintiff's mental condition because he did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ erred when he gave "little weight" to Dr. Baadarani's opinion.**

Plaintiff asserts the ALJ erred when he gave little weight to Dr. Baadarani's July 2017 Mental Residual Functional Capacity Assessment (MFRC) of Plaintiff.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p, at *2. Factors the ALJ should consider when determining the weight to give an opinion from "not

acceptable" medical sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise. SSR 06-03p, at *4. On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source. SSR 06-03p, at *5-6. The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6.

Dr. Baadarani noted in her July 2017 MFRC of Plaintiff that Plaintiff had moderate-to-extreme difficulties in every area associated with her ability to understand, to remember, or to apply information; to interact with others; to concentrate, to persist, or to maintain pace; and to adapt. Tr. 696-98. Dr. Baadarani noted Plaintiff suffers from "high levels of anxiety [that] caus[e] forgetfulness, confusion, and difficulty concentrating on daily activities"; has difficulty forming or developing new relationships; "lacks control over her emotions and behaviors"; and "experiences symptoms of depression and anxiety that hinder her ability to function normally." Tr. 697-

98.

The ALJ gave little weight to Dr. Baadarani's July 2017 MFRC on the ground that it was "not fully supported by the medical record." Tr. 32. The ALJ noted Dr. Baadarani's

> counseling notes primarily document [Plaintiff's] struggles to overcome culture shock. They show [Plaintiff's] anxiety is driven in part by these situational stressors rather than some internal, unmalleable force impervious to improvement.

Tr. 32. The ALJ also stated Dr. Baadarani's treatment notes "do not suggest [Plaintiff's] anxiety is particularly crippling," and Plaintiff also reported in December 2015 that she enjoyed her ESL class and had made some friends in her ESL class. Tr. 32. The record, however, reflects Plaintiff experienced several tramautic events in Iraq and, as a result, suffered traumatic nightmares, flashbacks, problems in concentration, and sleep disturbances that were not improved with medication or therapy. Although Dr. Baadarani made one or two references to culture shock in her treatment notes, the vast majority of the notes for two years refer to debilitating PTSD as a result of events in Iraq and other events in Plaintiff's life.

On this record the Court concludes the ALJ erred when he rejected Dr. Baadarani's opinion because he did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**IV.  The ALJ erred at Step Five when he found Plaintiff could
perform other jobs that exist in the national economy.**

Plaintiff asserts the ALJ erred at Step Five when he
identified other jobs in the national economy that Plaintiff
could perform because those jobs would require Plaintiff to speak
and to understand English.

Plaintiff testified at the hearing through a translator that
she does not understand English except for a "few words."
Tr. 47.  Although the ALJ found Plaintiff "is unable to
communicate in English," the ALJ, nevertheless, concluded
Plaintiff could perform other jobs that exist in the national
economy as a small-products assembler, laundry folder, and/or
production assembler.  Tr. 35-36.  Each job identified by the ALJ
has a general educational development (GED) language level of at
least one.  Tr. 36, 54-55.  According to the Dictionary of
Occupational Titles (DOT), a reasoning level of one requires the
ability:  to "read at a rate of 95 – 120 words per minute"; to
"[p]rint simple sentences containing subject, verb, and object,
and series of numbers, names, and addresses"; and to "speak
simple sentences, using normal word order, and present and past
tenses."  U.S. Dep't of Labor, Dictionary of Occupational Titles,
§ App. C (U.S. Emp. Serv., 4th ed. rev. 1991).  The record does
not support a finding that Plaintiff has any of those required
skills in English.  Although Defendant asserts the ALJ relied on
the VE's testimony in reaching his conclusion about Plaintiff's

17 - OPINION AND ORDER

ability to do other jobs in the national economy, the VE stated
at the hearing that Plaintiff's inability to communicate in
English did "not factor into [his] answers."  Tr. 55.

On this record the Court concludes the ALJ erred at Step
Five when he found Plaintiff could perform other jobs in the
national economy because he did not provide legally sufficient
reasons supported by substantial evidence in the record for doing
so.

## REMAND

The Court must determine whether to remand this matter for
further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172,
1179 (9th Cir. 2000).  The court may "direct an award of benefits
where the record has been fully developed and where further
administrative proceedings would serve no useful purpose."
*Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman*, 211 F.3d at 1178.  The
court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are no

>outstanding issues that must be resolved before a
>determination of disability can be made, and (3) it is
>clear from the record that the ALJ would be required to
>find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id*. at 1178 n.2.

On this record the Court concludes there are not any outstanding issues that must be resolved before a determination of disability can be made. As noted, the Court has concluded the Commissioner failed to provide legally sufficient reasons for rejecting the opinions of Drs. Burman and Baadarani. When this evidence is credited as true, it is clear from the record that the Commissioner would be required to find Plaintiff is disabled. For example, Dr. Burman noted Plaintiff was extremely anxious, had "great difficulty maintaining . . . activities of daily living" and due to Plaintiff's "current symptom profile and severity of psychological damage endured, she is not safe to work outside the home or pursue employment in society." Tr. 356.

Accordingly, the Court reverses the Commissioner's decision and remands this matter for the immediate calculation and payment of benefits to Plaintiff.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the

Commissioner and **REMANDS** this matter for the immediate

calculation and payment of benefits pursuant to sentence four of

42 U.S.C. § 405(g).

    IT IS SO ORDERED.

    DATED this 12th day of November, 2019.


                 s/ Anna J. Brown
                ANNA J. BROWN
                United States Senior District Judge